# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| PERRY AVRAM MARCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-189-JRG-HBG |
| | ) | |
| ARAMARK CORPORATION, | ) | |
| ARAMARK CORRECTION SERVICES, | ) | |
| LLC, TENNESSEE DEPARTMENT OF | ) | |
| CORRECTION, JASON WOODALL, | ) | |
| JANE AMONETT, TONY BELL, | ) | |
| JEFFREY PEMPEIT, ERIC FLOSS, | ) | |
| MARK ADAMS, LAWRENCE BABBIO, | ) | |
| JR., TODD ABRECHT, SANJEEV | ) | |
| MEHRA, DANIEL HEINREICH, | ) | |
| LEONARD COLEMAN, JR., STEPHEN | ) | |
| SADOVE, IRENE ESTEVES, PIERRE- | ) | |
| OLIVIER BECKERS-VIAJANT, LISA | ) | |
| BISACCIA, JOHN QUELCH, RICHARD | ) | |
| DREILING, CHS INC., and UNNAMED | ) | |
| PERSONS, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM & ORDER**

This is a pro se prisoner's complaint under 42 U.S.C. § 1983 that the United States District Court for the Middle District of Tennessee transferred to this Court after assessing Plaintiff with the filing fee [Doc. 13].

Now before the Court are Plaintiff's complaint and amended complaint [Docs. 1 and 18], Plaintiff's motion to unseal qui tam action, permit Plaintiff to proceed as qui tam Plaintiff, and to serve complaint [Doc. 12], Plaintiff's motion for status of transferred case [Doc. 17], and Plaintiff's motion for appointment of counsel [Doc. 19].

The Court will address each of these filings based on the substance thereof.

## I. QUI TAM

In both of his complaints [Docs. 1 and 18] and in his motion to, *inter alia*, unseal qui tam action [Doc. 12], Plaintiff states his intention to proceed qui tam in this action. Plaintiff also sets forth various claims on behalf of both the federal and state governments in his complaints. Specifically, Plaintiff asserts in his amended complaint that, as the Tennessee Department of Correction receives funds from the United States government, the Aramark Defendants are liable to the United States Government for violations of the False Claims Act under 31 U.S.C. § 3729 [Doc. 18 at 43–46]. Plaintiff also alleges that he brings this action on behalf of the Tennessee Department of Correction ("TDOC") for false claims brought by the Aramark Defendants [*Id.* at 54–61]. Accordingly, it appears that Plaintiff intended to bring this action against the Aramark Defendants on behalf of the United States and/or TDOC as a qui tam Plaintiff, also known as a relator. As Plaintiff did not comply with the applicable regulations for bringing such claims on behalf of either governmental entity, however, his qui tam claims will not proceed.

In qui tam actions, private citizens pursue fraud claims on behalf of the government. *Knox County ex rel Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc.*, 350 S.W.3d 511, 519 (Tenn. 2011); *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 640 (6th Cir. 2003). Both the United States and the State of Tennessee allow private citizens to bring certain claims under their False Claims Acts on their behalf as a qui tam plaintiff under certain circumstances. *See* 31 U.S.C. § 3729 et seq. and Tenn. Code Ann. § 4-18-101 et seq. Specifically, to bring a qui tam action on behalf of the United States, the qui tam plaintiff must, among other things, bring the action in the name of the United States Government and serve a copy of the complaint and all material evidence and information on the government. 31 U.S.C. § 3730(b)(1)(2). Also, to bring a qui tam action under the laws of the State of Tennessee, the qui

tam plaintiff must, among other things, bring the action in the name of both the individual and the state or the relevant political subdivision of the state and serve a copy of the complaint and all material evidence and information on both the Attorney General and Reporter. Tenn. Code Ann. § 4-18-104(c)(1)(3).

Plaintiff did not bring either of his complaints [Docs. 1 and 18] in the name of the United States or TDOC. Moreover, Plaintiff bases his fraud and/or False Claims Act claims on the allegation that the Aramark defendants fraudulently bid and secured a contract under the pretense that kosher meals cost more [Doc. 18 at 24]. The Sixth Circuit, however, has specifically held that contracts do not constitute a "claim" for which a qui tam plaintiff can pursue an action under the federal False Claims Act. *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 618 F.3d 505, 513 (6th Cir. 2010). Further, the record does not support finding that Plaintiff served copy of the complaint on any of the appropriate governmental entities.[1]

Accordingly, Plaintiff's motion to unseal qui tam action, to permit Plaintiff to proceed as qui tam Plaintiff, and to serve complaint [Doc. 12] will be **DENIED** to the extent that Plaintiff will not proceed qui tam herein. Further, the claims that Plaintiff has sought to bring qui tam will be **DISMISSED**.

## II. SCREENING THE AMENDED COMPLAINT

### A. Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious,

---

[1] While Plaintiff states in his motion to unseal qui tam action that he served the Attorney General and Reporter for the State of Tennessee, that the Attorney General and Reporter received the mailing, and that Plaintiff informed the Court of this mailing with a notice of filing dated March 2, 2017 [Doc. 12 at 1], nothing in the record supports any of these allegations.

fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### B. Allegations of the Complaint[2]

Plaintiff is an orthodox, observant Jew who follows kosher dietary laws, and the TDOC is aware of this fact [Doc. 18 at 8]. In 2016, Defendants Aramark and Aramark Correctional Services

---

[2] Plaintiff's amended complaint [Doc. 18], which is the operative complaint for purposes of screening under the PLRA [Doc. 15 at 4], is sixty-five pages long and sets forth a number of allegations, some of which are only tangentially relevant to this cause of action. The Court has reviewed Plaintiff's amended complaint in detail and endeavored to set forth a summary of Plaintiff's most relevant claims herein.

("the Aramark Defendants") entered into a contract for food service with TDOC ("the Aramark contract") [*Id.* at 10]. The Aramark contract provides that the Aramark Defendants will provide all meals, including religious and special event meals, for TDOC inmates in accordance with TDOC policies [*Id.* at 10–11], and that Defendant Bell, as management staff, will oversee the contract, including the kosher menu [*Id.* at 11 fn. 7].

TDOC policies provide that religious diet meals will "conform as closely as possible" to the general population menu and that inmates will receive two hot meals each day of the week, including weekends [*Id.* at 12]. TDOC policies also provide guidelines for the preparation and service of kosher foods and state that kosher meals will be boxed and prepackaged [*Id.* at 12]. Further, Defendants Woodall and Amonett are responsible for approving the menus under the Aramark contract [*Id.* at 13]. The Aramark contract also requires that Aramark provide a holiday menu for the entire inmate population [*Id.* at 14].

The Aramark kosher menu, however, is based upon a five-day cycle, designed around only two foods (specifically peanut butter and "textured vegetable protein" ("TVP")), and each breakfast is essentially the same meal with "three minor variations of an accompanying cereal side dish" [*Id.* at 15–16]. When Plaintiff asked Defendant Pempeit why he could not have hard-boiled eggs or other breakfast entrees, Defendant Pempeit told Plaintiff to get out of his face and stated "[y]ou are a Jew, you chose this food we are giving you for yourself, so choke on it if you don't like peanut butter. Get your Jesus on and you can eat like a Christian" [*Id.* at 16]. Plaintiff complained about this incident to Defendant Bell, who asked Plaintiff not to file paperwork about it and stated that he would take care of it [*Id.*].

Every kosher lunch and dinner meal is built around a TVP product named Ultra-Soy, a product of Defendant CHS, that "is intentionally masked and passed[]off as something more, with

only a slight change of flavoring and color" [*Id.* at 17]. Also, there are only five kosher lunch meals and six kosher dinner meals, all served over a seven day cycle, while the general population menu includes twenty-five different meal combinations over a twenty-eight day cycle [*Id.*]. Most of the meals served to the general population, however, are kosher quality and would be considered kosher if prepared in the kosher kitchen in accordance with Kashrut laws [*Id.* at 17, 23].

Further, Ultra-Soy is a modified and chemically treated soybean product that is processed with dangerous chemicals, including hexane, that have damaging effects when served in high volume over a long period of time [*Id.* at 18–19]. Defendant CHS markets Ultra-Soy as a meat extender that should be used as a food modifier, additive, and enhancer, and is aware that the Aramark Defendants are using it in an unintended manner to replace all other food products and that the use of Ultra-Soy in high doses can cause health dangers, but Defendant CHS has withheld warnings or knowingly conspired not to correct this harm [*Id.* at 18, 22].

Accordingly, the kosher menu requires Plaintiff to ingest unhealthy quantities of hexane and soy [*Id.* at 19–20]. As a result, Plaintiff has suffered digestive problems, all of which he has reported to MCCX medical staff and all of which are documented in his prison records [*Id.* at 20]. Medical staff at MCCX have told Plaintiff that an easy and effective way to solve his digestive issues is to consume the general inmate population menu, rather than the kosher diet [*Id.* at 21]. Plaintiff has also experienced emotional health issues that he attributes to the kosher diet [*Id.* at 21–22]. TDOC has been deliberately indifferent to Plaintiff's medical condition due to his overly-high soy consumption and he is not being treated appropriately [*Id.* at 22].

Despite TDOC policy providing for two hot meals a day for all inmates, the kosher menu meals served on Saturday and Sunday are designed to be and are served cold, although the general population receives two hot meals on Saturday [*Id.* at 22–23]. Plaintiff alleges that this is

intentionally discriminatory because Saturday is the Jewish Sabbath, which is designated as a day of joy [*Id.* at 23]. Most of the foods served to the general population contain little to no soy and therefore would not trigger Plaintiff's soy intolerance [*Id.*].

Also, Defendant Bell has refused to allow Plaintiff to inspect the MCCX kitchen that is alleged to be kosher and Plaintiff asserts that the MCCX kitchen is not kosher [*Id.* fn. 13]. As such, the food that comes therefrom does not satisfy the requirements of Jewish law [*Id.* fn. 13].

Cost is not an issue that would prohibit the Aramark Defendants from making the kosher menu conform to the general menu more closely, as the higher cost of special menus, including kosher meals, is "blended" into the contract in a manner that accounted for those higher costs [*Id.* at 24]. By using Ultra-Soy, the Aramark Defendants have made the kosher meals less expensive than the general population meals, and thus the Aramark defendants fraudulently bid and secured the contract under the pretense that kosher meals would have higher costs [*Id.* at 24]. As such, serving non-prepackaged kosher meals is fraud that causes Plaintiff health damage and infringes on Plaintiff's right to free exercise of his religion and equal protection [*Id.* at 24–25].

Defendant Bell has deliberately harmed Plaintiff by "denying him the full nutritional value and servings of the contracted for [k]osher meals" and serving him non-kosher foods [*Id.* at 25]. When Plaintiff informed Defendant Bell that some of his food was not kosher, Defendant Bell told Plaintiff he would bless it and make it kosher because he was now Plaintiff's rabbi [*Id.* at 25–26].

Defendants Bell and Amonett knowingly denied Plaintiff's request to have a holiday meal because he is an orthodox Jew [*Id.* at 26]. On Thanksgiving, after Plaintiff asked for his Thanksgiving meal, Defendant Pempeit brought Plaintiff his normal Ultra-Soy meal, made the sign of the cross over it, and stated "that is special enough. Get lost" when he gave it to Plaintiff [*Id.*]. Also, when Plaintiff went to pick up his Christmas meal, a fellow inmate told Plaintiff that

7

Defendant Pempeit had told the inmate to tell Plaintiff that it was the day to celebrate the birth of Jesus, there would be nothing special for Plaintiff, and for Plaintiff to get lost [*Id.*].

The kosher meals Plaintiff receives have various deficiencies, some of which render them non-kosher, and Defendants do not maintain a kosher kitchen [*Id.* at 27–29].

Also, the Aramark Defendants have breached the Aramark contract in various ways [*Id.* at 2930].

### C. Analysis

#### 1. Individual Aramark Defendants

First, Plaintiff has not set forth any specific allegations as to the individual Defendants alleged to work for the Aramark Defendants that allow the Court to plausibly infer that these individuals were personally involved in any violation of Plaintiff's constitutional rights and/or any state law claim. Thus, the complaint fails to state a claim upon which relief may be granted as to these Defendants. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of constitutional rights). As such, Defendants Floss, Adams, Babbio, Abrecht, Mehra, Heinreich, Coleman, Sadove, Esteves, Beckers-Viajant, Siaccia, Quelch, and Dreiling will be **DISMISSED**.

#### 2. Defendant CHS

Next, Plaintiff's only allegations against Defendant CHS are that it knows that the Aramark Defendants are using its product, Ultra-Soy, in a manner that may cause injuries, but has either withheld warnings or knowingly conspired not to correct this harm [*Id.* at 18, 22]. These allegations are insufficient to state a claim for civil conspiracy under § 1983. *Spadafore v. Gardner*, 33 F.3d 849, 854 (6th Cir. 2003) (providing that civil conspiracy must be pled with some

8

degree of specificity) (citations omitted) *Hooks v. Hooks,* 771 F.2d 935, 944 (6th Cir.1985) (setting forth the elements of a claim for conspiracy).

Further, nothing in the complaint suggests that in producing and/or failing to warn of the dangers of over consumption of Ultra-Soy, Defendant CHS was exercising powers traditionally reserved to the state, that the state significantly encouraged or coerced Defendant CHS, or that there was such a close relationship between the state and Defendant CHS that Defendant CHS's actions may be attributed to the state. *Tahfs v. Proctor*, 316 F.3d 584, 590–91 (6th Cir. 2003) (setting forth the relevant tests for whether a private party may be considered a state actor for purposes of §1983). Thus, the Court cannot plausibly infer that Defendant CHS is a state actor as required for Defendant CHS to be liable under § 1983.

Accordingly, Defendant CHS will be **DISMISSED**.

### 3. Defendants TDOC and Woodall

Plaintiff has also sued TDOC and Defendant Woodall in his official capacity [*Id.* at 5]. As courts treat official capacity suits as against the governmental entity, *see Kentucky v. Graham*, 473 U.S. 159, 165 (1985), however, any claims against Defendant Woodall in his official capacity are actually against the State of Tennessee and/or TDOC. Further, the Eleventh Amendment provides the State of Tennessee with immunity from § 1983 claims. *Rodgers v. Mich. Dep't of Corrs.*, 29 Fed. App'x 259, 260 (6th Cir. 2002). This immunity extends to state governmental agencies, such as TDOC, as they are "arms" of the state. *Dubuc v. Mich. Bd. Of Law Exam'rs*, 342 F.3d 610, 615 (6th Cir. 2003). This immunity also extends to claims for injunctive relief and other forms of equitable relief. *See Lawson v. Shelby Cty., Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) (providing that "the [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for

9

injunctive, declaratory or monetary relief."). Thus, Defendants TDOC and Woodall are immune from Plaintiff's claims and they will be **DISMISSED**.

### 4. Eighth Amendment Claims

Plaintiff first alleges that TDOC has violated his rights under the Eighth Amendment because TDOC has been deliberately indifferent to his spiritual needs by providing him with non-kosher foods and by pressuring Plaintiff to abandon his kosher diet [*Id.* at 40]. As set forth above, however, Defendant TDOC is immune to Plaintiff's claims under § 1983.

Further, even if Plaintiff had alleged that any individual Defendant was liable for this claim, Plaintiff only asserts that the provision of non-kosher foods "for a sincere, observant Jew[] is tantamount to pollution of the soul," and does not set forth allegations that suggest that any Defendant has provided Plaintiff foods that created a risk of serious harm to Plaintiff's health or safety. As such, Plaintiff's allegations regarding violation of the Eighth Amendment through the provision of non-kosher foods fail to state a claim upon which relief may be granted under § 1983. *See Farmer v. Brennan*, 511 U.S. 825, 834–57 (holding that, to violate the Eighth Amendment, a prison official must be deliberately indifferent to inmate health or safety in a manner that poses "a substantial risk of serious harm").

Plaintiff next alleges that all Defendants have violated his rights under the Eighth Amendment because they have been deliberately indifferent to his serious medical needs resulting from his high soy kosher diet [*Id.* at 41]. Plaintiff, however, does not set forth any facts from which the Court can plausibly infer that any named Defendant is a medical provider or has been personally involved in denying Plaintiff appropriate medical care. Rather, Plaintiff appears to allege that Defendants' knowledge that he has experienced medical issues due to the high soy kosher diet and failure to step in to remedy the underlying kosher meal issues are sufficient to state

10

an Eighth Amendment claim based on the denial of appropriate medical care [*Id.* at 20–21, 41]. Such allegations are insufficient to state a claim under § 1983. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of constitutional rights); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983).

Accordingly, Plaintiff's allegations that his Eighth Amendment rights have been violated fail to state a claim upon which relief may be granted under § 1983 and will be **DISMISSED**.

### 5. First Amendment, Equal Protection,[3] and RLUIPA Claims

Plaintiff's claims that the Aramark Defendants and Defendants Amonett, Bell, and Pempeit have violated Plaintiff's rights under the First Amendment, Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") will proceed against these Defendants.

### 6. Conspiracy

Plaintiff also seeks to bring a conspiracy claim as to all Defendants [*Id.* at 35–36]. "A civil conspiracy under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir.2011) (quoting *Revis v. Meldrum,* 489 F.3d 273, 290 (6th Cir.2007)). A plaintiff must plead a § 1983 conspiracy claim "with some degree of specificity and [] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. . . ." *Spadafore v. Gardner,* 330 F.3d 849, 854

---

[3] The Court liberally construes Plaintiff's claims for discrimination and violation of "equal rights" as alleging a violation of the Equal Protection Clause.

(6th Cir. 2003) (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987)). A successful civil conspiracy claim requires evidence that (1) a "single plan existed," (2) the defendants "shared in the general conspiratorial objective" to deprive plaintiff of his constitutional or federal statutory rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff. *Hooks v. Hooks,* 771 F.2d 935, 944 (6th Cir.1985); *Bazzi,* 658 F.3d at 602.

Plaintiff has only set forth vague and conclusory allegations of conspiracy [Doc. 18 at 22, 36–37]. Thus, his allegations fail to state a claim for conspiracy upon which relief may be granted under § 1983 as to all Defendants and this claim will be **DISMISSED**.

### 7. Neglect to Prevent Civil Rights Violations

Plaintiff also seeks to bring a claim for neglect to prevent violations of his civil rights under 42 U.S.C. § 1986 based on the alleged conspiracy to deprive Plaintiff of his civil rights [Id. at 36–37]. Such a claim, however, requires an underlying conspiracy to deprive Plaintiff of his rights. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314–15 (6th Cir. 2005) (holding that where a plaintiff failed to establish a cause of action for conspiracy under 42 U.S. § 1985, he had no cause of action under § 1986). As set forth above, the Court has already found that Plaintiff's allegations fail to state a claim for civil conspiracy. Without such a conspiracy, Plaintiff's claim under § 1986 also fails. *Id.* Accordingly, Plaintiff's complaint fails to state a claim under § 1986 upon which relief may be granted and this claim will be **DISMISSED**.

### 8. Federal and State RICO claims

Plaintiff has also alleged that Defendants have violated both the state and federal Racketeer Influenced and Corrupt Organizations Acts ("RICO"). Plaintiff's complaint fails to state a federal RICO claim, however, because he did not allege any injury to his business or property as required for such a claim. *See* 18 U.S.C. § 1964(c); *Fleischhauer v. Feltner,* 879 F.2d 1290, 1299–1300

(6th Cir.1989). Further, Plaintiff's general allegations of fraud and racketeering are insufficient to meet the heightened pleading standard required for a Tennessee RICO claim. *Anderson v. Mezvinsky*, No. E1998-00795-COA-R3-CV, 2001 WL 984908, at *9 (Tenn. Ct. App. Aug. 28, 2001). Thus, these claims will be **DISMISSED**.

### 9. Preservation of Religious Freedom Act

This claim will proceed as to all remaining Defendants.

### 10. Tennessee Human Rights Act

This claim will proceed as to all remaining Defendants.

### 11. Breach of Contract

Plaintiff's claims for breach of contract as a third-party beneficiary will proceed against the Aramark Defendants.

### D. Conclusion

Accordingly, the Clerk will be **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Aramark Corporation, Aramark Correction Services, Pempeit, Amonett, and Tony Bell. Plaintiff will be **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty (20) days of receipt of this Memorandum and Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to return the completed service packets within the time required may result in dismissal of this action for want of prosecution and/or failure to follow Court orders.

Defendants shall answer or otherwise respond to the complaint and within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default.

Plaintiff will be **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Plaintiff will be **NOTIFIED** that failure to provide a correct address to this Court within fourteen (14) days following any change of address may result in the dismissal of this action.

### III. MOTION FOR STATUS

Plaintiff's motion for status [Doc. 17] will be **GRANTED** to the extent that this order is being entered.

### IV. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has also filed a motion for appointment of counsel [Doc. 19]. Parties do not have an "automatic" constitutional right to counsel in a civil rights suit and, typically, counsel is only appointed in an exceptional case. *See Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996) (observing that courts in the Sixth Circuit do not appoint counsel for indigent and pro se prisoners in civil cases absent truly extraordinary circumstances). The Court has carefully considered Plaintiff's motion, his ability to represent himself, the record as a whole, and the issues and complexity of this case, and concludes that the appointment of counsel is not warranted because there are no exceptional circumstances to justify appointing counsel. *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993); *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Accordingly, Plaintiff's motion for appointment of counsel [Doc. 19] will be **DENIED.**

### V. MOTION FOR EXTENSION OF TIME

Plaintiff has also filed a motion for extension of time to file a motion for reconsideration [Doc. 23]. In this motion, filed October 10, 2017, Plaintiff seeks an unspecified extension of the deadline to file a motion for reconsideration of an order the Court entered on September 29, 2017,

based on the allegation that Plaintiff's legal pleadings, notes, and research for the instant suit had been lost during a prison transfer [*Id.* at 1–2].

A motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure must be filed within twenty-eight days of entry of the judgment. Fed. R. Civ. P. 59(e). Further, a motion to seek relief from an order pursuant to Rule 60(c) must be filed within a reasonable time or, for certain grounds, within one year of the order. Fed. R. Civ. P. 60(c).

Nothing in Plaintiff's motion suggests any reason that Plaintiff was unable to prepare a motion to alter or amend the Court's order under Rule 59(e) within twenty-eight days of entry of the order without his legal files. Likewise, nothing in Plaintiff's motion suggests any reason that Plaintiff could not now file a motion for relief from the Court's order under Rule 60(b) with or without his legal files.

Accordingly, Plaintiff's motion for extension of time [Doc. 23] will be **DENIED** without prejudice.

## VI. CONCLUSION

**For the reasons set forth above:**

1. Plaintiff's motion to unseal qui tam action, to permit Plaintiff to proceed as qui tam Plaintiff, and to serve complaint [Doc. 12] is **DENIED** to the extent that Plaintiff will not proceed qui tam herein;

2. The claims that Plaintiff has sought to bring qui tam are **DISMISSED**;

3. Defendants Floss, Adams, Babbio, Abrecht, Mehra, Heinreich, Coleman, Sadove, Esteves, Beckers-Viajant, Siaccia, Quelch, Dreiling, CHS, TDOC, and Woodall are **DISMISSED**;

4. Plaintiff's Eighth Amendment claims are **DISMISSED**;

5. Plaintiff's claims under the First Amendment, Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") will proceed;

15

6. Plaintiff's conspiracy claims are **DISMISSED**;

7. Plaintiff's federal and state RICO claims are **DISMISSED**;

8. Plaintiff's state law claims for violation of the Preservation of Religious Freedoms Act and violation of Tennessee Human Rights Act will proceed against all remaining Defendants;

9. Plaintiff's state law claim for breach of contract will proceed against the Aramark Defendants;

10. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Aramark Corporation, Aramark Correction Services, Pimpeit, Amonett, and Tony Bell;

11. **Plaintiff is ORDERED** to complete the service packets and return them to the Clerk's Office within twenty (20) days of receipt of this Memorandum and Order;

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing;

13. Plaintiff is **NOTIFIED** that failure to provide a correct address to this Court within fourteen (14) days following any change of address may result in the dismissal of this action;

14. Plaintiff's motion for status [Doc. 17] is **GRANTED** to the extent that this memorandum and order is being entered;

15. Plaintiff's motion for appointment of counsel [Doc. 19] is **DENIED**; and

16. Plaintiff's motion for extension of time [Doc. 23] is **DENIED** without prejudice.

**SO ORDERED.**

**ENTER:**

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE